McGee and another, Appellants, v. Kuchenbaker and another, Respondents.

*November 1—November 29, 1966.*

For the appellants there was a brief and oral argument by *Robert R. Gavic* of Spring Valley.

For the respondents there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar, Jr.*

HALLOWS, J.   The only issue raised is whether there is sufficient credible evidence to sustain the jury's finding that McGee was negligent in respect to speed.   If McGee was negligent as to speed he forfeited his directional right-of-way as he approached the intersection. Sec. 346.18 (1), Stats. 1965.   In reviewing this question of the sufficiency of the evidence, we must accept the

view of the evidence most favorable to the support of the verdict. *Zartner v. Scopp* (1965), 28 Wis. (2d) 205, 209, 137 N. W. (2d) 107; *Heibel v. Voth* (1955), 271 Wis. 350, 353, 73 N. W. (2d) 421; and *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549.

We think there is sufficient credible evidence to sustain the finding of the verdict that McGee was negligent in respect to speed. Both drivers lived in the area and were familiar with the hazards of this blind intersection. Although the speed limit on the crossroads was 65 miles per hour both drivers, because they were approaching an intersection and because of the inherent hazards existing, were required to limit their speed under sec. 346.57 (2) and (3), Stats. Under sub. (2) no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. Sub. (3) provides an operator of a vehicle, consistent with the requirements in sub. (2), shall drive at an appropriate reduced speed when approaching and crossing an intersection or when approaching a hillcrest or when special hazards exist in regard to other traffic. In *Drake v. Farmers Mut. Automobile Ins. Co.* (1963), 22 Wis. (2d) 56, 66a, 125 N. W. (2d) 391, 128 N. W. (2d) 41, we stated whether the standard for determining speed under sec. 346.57 (3) was violated was to be determined on the facts of each case. While this section provides an operator must drive at an appropriate reduced speed when approaching and crossing an intersection, "appropriate reduced speed" as used in this subsection is a relative standard and means less than the otherwise lawful speed. A person driving less than the posted speed might not be required to reduce his speed because he is already traveling at a reduced speed. Certainly a driver traveling five or 10 miles an hour could hardly be expected to reduce his speed. What reduced speed is appropriate depends upon the particular

facts in light of the speed a person of ordinary intelligence and prudence would drive under the circumstances, so as not to subject himself or others or his or their property to an unreasonable risk of injury or damage.

Commencing at the bottom of the hill some 600 feet east of the intersection and coming up the hill, McGee could not see the crossroad until he was almost at the intersection. The exact distance east of the intersection from which one can first see a vehicle on the crossroad coming from the south is not in the record. He testified that when he was 200 to 300 feet from the intersection coming up the incline he started gently braking from a speed of 40 miles per hour and entered the intersection at about 30 miles per hour. He stated he did not see Kuchenbaker coming from his left because he was looking to his right. This testimony of McGee as to his speed, of course, is not the most favorable to support the verdict and was rejected by the jury because approximately the same rate of speed on the part of Kuchenbaker was found by the jury not to be negligent. Kuchenbaker testified he took his foot off the accelerator some 300 to 500 feet from the intersection and had slowed down to 25 to 30 miles per hour when he entered the intersection.

The evidence sufficient to sustain the verdict lies not in the testimony of McGee but in the reasonable inferences which may be drawn from the damage to the vehicles, from their location in the intersection area after the accident, and from skid marks attributable to McGee's car. In *Pagel v. Kees* (1964), 23 Wis. (2d) 462, 467, 127 N. W. (2d) 816, we said a jury could consider physical facts after the accident including the position of the vehicles and their damage as a basis for an inference of speed. See also *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83; *Odya v. Quade* (1958), 4 Wis. (2d) 63, 90 N. W. (2d) 96; and *Mackowski v. Milwaukee Automobile Mut. Ins. Co.* (1957), 275 Wis. 545, 82 N. W. (2d) 906. The distance from the point of im-

pact to where Kuchenbaker's truck came to rest in the field northwest of the impact is not in the record, but from the photographs it would appear the truck traveled some 50 to 70 feet off the road into the field, and was turned around. The extensive damage resulting from the impact, both to the side of Kuchenbaker's truck and especially to the front of the McGee car, is sufficient to sustain an inference of excessive speed on the part of McGee under the circumstances of a blind intersection. True, the exact speed cannot be determined by such evidence, but certainly it may be inferred under the circumstances that McGee was not driving at an appropriate reduced speed when approaching and crossing the intersection, and his speed was not reasonable and prudent under the circumstances. Photographs showing substantial damage to the cars as well as testimony thereof are sufficient from which an inference of excessive speed may be drawn. *La Vallie v. General Ins. Co.* (1962), 17 Wis. (2d) 522, 527–529, 117 N. W. (2d) 703.

Other physical facts indicate McGee was traveling at an imprudent rate of speed. The traffic officer who investigated the collision found 57 paces of fresh skid marks in the gravel shortly after the accident extending from the east to the vicinity of the center of the intersection. These marks were approximately 171 feet long. No objection to the testimony relating to these skid marks was made by McGee, but it is now contended these skid marks are not credible evidence. It is argued that the traffic officer did not identify these skid marks as having been made by the McGee car, and there is no interpretative evidence of what 171 feet of skid marks indicate on a gravel road. We do not think the objections are now well taken. Kuchenbaker does not argue 171 feet of skid marks are indicative of any given speed, but rather of the time interval during which McGee was traveling with his brakes on. The jury could reasonably infer McGee applied his brakes as soon as he saw Kuchenbaker

emerge from behind the embankment 50 feet south of the intersection, or approximately 75 feet south of the point of impact. Kuchenbaker traveling 25 to 30 miles per hour required two and one-half seconds to cover the 75 feet. Taking McGee's reaction time as only one-half second, McGee traveled 171 feet uphill on a gravel road with his brakes locked in about two seconds, or at a speed of almost 60 miles per hour.

McGee contends he had the directional right-of-way and Kuchenbaker should have made certain no traffic was approaching from his right before proceeding into the intersection even if he had to stop. But this argument is based upon the premise McGee did not forfeit his directional right-of-way because of his speed. The duty under sec. 346.57 (3), Stats., to drive at an appropriate reduced speed is not suspended because one has by hindsight or unknowingly the directional right-of-way. The fortuitous circumstance of having the directional right-of-way is material to the correlative duty to yield but not to the issue of speed. The facts of this case are strikingly similar to those in *Pagel v. Kees* (1964), 23 Wis. (2d) 462, 127 N. W. (2d) 816. There, the accident occurred at an intersection of two gravel-covered town roads and the intersection was partly obstructed. Kees, who would otherwise have had the directional right-of-way, was found to have forfeited such right by his imprudent speed approaching the intersection. Likewise, in that case speed was inferred partly from the physical facts after the accident. While in the instant case the jury might have accepted McGee's version of the accident, it did not, and because its verdict is supported by sufficient credible evidence we will not disturb it.

*By the Court.*—Judgment affirmed