447 P.2d 414

Foryl KIDD, Zula Kidd and Susan Kidd, a minor, by Foryl Kidd, her guardian ad litem, Plaintiffs-Appellants,

v.

GARDNER ASSOCIATED, INC., and Clark R. Gardner, Defendants-Respondents.

No. 10167.

Supreme Court of Idaho.

Nov. 25, 1968.

Rehearing Denied Dec. 20, 1968.

Young & George, Rigby, for appellants.

Maguire & Kisling, Pocatello, for respondents.

TAYLOR, Justice.

Plaintiffs (appellants) brought this action to recover damages for personal injuries sustained by Zula and Susan Kidd resulting from a collision between a pickup truck driven by plaintiff Zula Kidd and a pickup truck driven by defendant (respondent) Clark R. Gardner and owned by defendant (respondent) Gardner Associated, Inc. During the course of trial the claim for damages for personal injuries to Susan Kidd was abandoned by plaintiffs. The jury returned its verdict in favor of the defendants on the claim for damages to plaintiff Zula Kidd, and plaintiffs appealed.

The accident occurred in Madison County on July 7, 1965, at the "Weeks Corner" intersection of a two-lane north-south road (Archer Road) and a one-lane east-west road. Archer Road was at the time under reconstruction from the intersection north. From the intersection to the south there was no public road in existence at the time of the accident. At that time traffic going south on Archer Road turned east at this intersection on the road upon which Mrs. Kidd was approaching the intersection from the west. A part of the work being done by defendant Gardner Associated was to construct a new road from the intersection extending south down to the South Fork of the Snake River, where a bridge was to be constructed across the river. The sheriff, who, together with his deputy, made an investigation at the scene of the accident, re-

ferring to the road being constructed to the south, testified:

"Q And do you recall how close to the west edge of the road it was where the vehicle had been traveling south?

"A Well, going by this diagram, it would be six inches from the edge of the road. That wasn't much of a road on that end of it. That was just made passable for these trucks because it had been opened up just at the time that these people started hauling gravel out of there.

"Q That had been for some time though, hadn't it?

"A Well, that summer. I don't recall when it was opened. I lived there all my life and that road was never there until these people started hauling gravel out of there and that was just a few months prior to this accident."

On the south side of the intersection and on each side of the opening where the trucks entered and left the intersection two barricades had been set up, one on the east and one on the west of the opening, bearing the words, "ROAD CLOSED" and "DETOUR" and a black painted arrow pointing to the east, thus directing traffic moving south on Archer Road not to enter upon the extension being constructed to the south, and to turn to the east.

The width of the traveled portion of Archer Road north of the intersection was 21 feet. Part of the construction involved widening of the traveled portion to 32 feet. The width of the east-west road was not shown by the record, except that where it crossed ditches on bridges it was not wide enough for two cars to pass. The surface of both roads at the intersection was gravel.

There was a bridge over a ditch which crossed the east-west road on the west side of the intersection. This bridge was estimated to have been located five to fifteen feet west of the west side of Archer Road at the intersection.

Zula Kidd was driving a pickup truck east on the one-lane road, her daughter Susan accompanying her as a passenger. Clark Gardner was driving a pickup truck south on Archer Road.

Mrs. Kidd testified that the road upon which she was traveling was a county road. Whether she was qualified to so testify was not tested upon cross-examination and her testimony on this point was not refuted. Upon being asked as to the speed at which she had been traveling along the one-way road toward the intersection, Mrs. Kidd testified:

"A It is a winding road and I wasn't going very fast. About five or ten miles an hour."

In describing her approach to the intersection and the accident Mrs. Kidd further testified:

"Q Now, did you—what did you do as you approached this intersection?

"A As I approached the intersection, I slowed up and came to a near stop at the bridge and reasonably where I could look out to the road to see if there was anything coming, and I couldn't see anything, so, I eased out into the intersection.

"Q Did you do anything as to the manipulation to the car?

"A I put on the brakes and shifted into low.

"Q You shifted gears on the truck?

"A Yes."

Clark Gardner testified that as he was proceeding south on Archer Road he estimated his speed to be around 30 miles an hour; that the road was under construction and was in a rough condition; and further:

"Q Where were you on the road? What was your position, the position of your vehicle at the time that you first observed Mrs. Kidd?

"A Well, I was in the intersection and I just noticed out of the corner of my eye that there was another vehicle right there coming across that bridge and that's when I first became aware that she was there.

\* \* \* \* \* \*

"Q Did you have an opportunity to observe the speed at which Mrs. Kidd was traveling?

"A The only observation that I would be able to make would be when I saw her that I knew a collision was imminent and that there was nothing that I could do really to avoid it at that time.

"Q Well, was she going in your opinion slow, fast, or what miles per hour?

"A Well, I think she was going faster than 10 miles an hour.

"Q Did you have any opportunity or any time to do anything or did you do anything to avoid the collision?

"A I didn't have time to do anything. It was a matter of a second, just a look and there it was.

\* \* \* \* \* \*

"Q Do you recall whether or not you had seen Mrs. Kidd in time to apply your brakes?

\* \* \* \* \* \*

"A I didn't have time to put on the brakes, no."

Mr. Gardner did not testify that he slowed his speed on approaching or entering the intersection.

The sheriff testified that the Gardner truck left about four feet of skid marks. Mrs. Kidd's vehicle left eight feet of skid marks. Both trucks suffered extensive damage and Mrs. Kidd was severely injured.

At the time of the accident defendant Gardner Associated, Inc. was employed in the reconstruction of Archer Road in the general vicinity of the intersection. Vehicles belonging to the company were hauling materials to a point near the intersection, and in so doing crossed the intersection at frequent intervals. The contract between Gardner Associated and the prime contractor required Gardner Associated to "provide and maintain proper warning signals, signs, lights, barricades and fences on and along the line of said work, and shall take all other necessary precautions for the protection of the work and safety of the public." It was admitted that at the time of the collision there was no stop or truck-crossing sign to warn the public traveling on the east-west road of the construction activity on the north-south road. Gardner Associated claimed that ordinarily a portable warning sign was maintained at the intersection and that the construction area was checked periodically to insure that the sign had not been removed. Clark Gardner was employed at the time by Gardner Associated, Inc. as a superintendent on the project. At the time of the accident he was driving from the construction site to the loading area from which materials were being taken for the construction, and was acting in furtherance of his job of overseeing the construction work.

There was evidence tending to show Mrs. Kidd, who lived within five miles of the intersection, knew that construction was going on in the general area. It was shown by the evidence that the view of a driver approaching the intersection from either direction was obstructed by buildings, fences, weeds, and other growth so that neither driver could see vehicles approaching the intersection on the other road. The day was sunny and clear and the roads were dry.

Plaintiffs brought this action asserting liability on the part of Clark Gardner on the ground of negligence in his operation of the pickup truck driven by him, and asserting the liability of Gardner Associated, Inc. as owner of the pickup driven by Clark Gardner under the doctrine of respondeat superior, and also that Gardner Associated was liable on the ground of its negligence in failing to maintain warning signs at the intersection. The defendants denied any negligence on their part and alleged contributory negligence on the part of Mrs. Kidd as a proximate cause of the accident.

Plaintiffs assign as error the following instruction No. 25 given by the trial court:

"Ladies and gentlemen, you are instructed that the law of the State of

Idaho governing the movement of traffic as included in the previous instructions do not apply to persons, motor vehicles and other equipment while such persons, motor vehicles or other equipment are actually engaged in work upon the surface of a highway, but do apply to such persons when travelling to and from such work."

This instruction was based upon the provisions of I.C. § 49–525(b), which is as follows:

"(b) Unless specifically made applicable, the provisions of this act shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work."

"[T]his act" refers to S.L.1953, ch. 273, compiled in Idaho Code as §§ 49–501 to 49–846 and 49–1001 to 49–1126, including ch. 7 of Title 49, covering "OPERATION OF VEHICLES—RULES OF THE ROAD." Other modifying instructions given by the court are set out in the footnote.[1]

At the time of the accident Clark Gardner was driving the defendant's pickup truck from the construction site, where "subgrade" was being dumped, to the place where the material was being loaded. Concededly he was acting within the scope of his employment as supervisor of the road construction in traveling from point to point. However, he was not "actually engaged in working upon the surface of * [the] highway." He was actually "traveling to or from such work," that is, to and from the place where the work on the surface of the highway was being performed. He, therefore, was not acting within the exemption granted by the foregoing I.C. § 49–525(b), but was at the time subject to the statutory rules of the road.

■ The court erred in giving instruction No. 25 and in submitting to the jury the supposed issue as to whether or not Clark Gardner was at the time subject to the rules of the road. The error was prejudicial and requires reversal of the judgment and a new trial.

In Pree v. Hymbaugh, 23 Ill.App.2d 211, 162 N.E.2d 297 (1959), the appellate court of Illinois held that the driver of a truck loaded with gravel which was to be spread upon a road several miles distant from the scene of an accident was not exempted from the rules of the road by a statute

1. "Instruction No. 24. You are instructed, that a contractor engaged in the repair or improvement of a public highway open to public travel during the time the work is going on has the right to obstruct public travel thereon, but must exercise that right with due regard to the subservient right of the public to use the highway."

"Instruction No. 26. Ladies and gentlemen, you are instructed that although by law the rules of the road as established by Idaho Statutes do not apply to persons or vehicles engaged in work upon the surface of the highway, nevertheless, this provision does not give to such persons a license to act without regard to the rights or safety of others nor to disregard a rule of the road without any good reason for doing so and when an ordinary reasonable and prudent person under the same circumstances would not have done so."

"Instruction No. 27. Ladies and gentlemen you are instructed that if you find Clark Gardner to have been engaged in working upon the surface of the highway at the time of this accident, you are instructed that he was nevertheless under a duty to exercise reasonable care to avoid injury to others."

"Instruction No. 28. Ladies and gentlemen, you are instructed that if you believe Clark Gardner was not subject to the rules of the road because of working upon the surface of the road at the time of the accident, nevertheless, if you believe that a reasonable person acting under the same circumstances and conditions would have yielded the right-of-way to the plaintiff in this case you may find Clark Gardner negligent for not having done so.

"It is, also, true that if you find that a reasonable person, acting under the same circumstances as Clark Gardner, would have felt that he was traveling at an excessive and unreasonable rate of speed then you may find the speed at which Clark Gardner was traveling to have been unreasonable and negligent."

similar to ours, "Since defendant was not then actually engaged in work upon the surface of the highway".

Under a statute similar to our I.C. § 49–525(b), the California District Court of Appeals in Gonsalves v. Petaluma Building Materials Company, 181 Cal.App.2d 320, 5 Cal.Rptr. 332 (1960), held that the driver of a water truck in making a turn or loop in a cross-over between the lanes of a four-lane divided highway to resume work on the southbound lanes, had ceased to be "actually engaged in work upon the surface of the road" and had commenced "traveling to * * * such work."

In McNabb v. DeLaunay, 223 Or. 468, 354 P.2d 290 (1960), the Oregon Supreme Court concluded that a statute similar to our I.C. § 49–525(b) exempted the driver of a truck who had just delivered a hot load of asphalt to a patching crew and was turning around within the area between two flagmen when struck by a car driven by plaintiff's host, who for failure to keep a lookout did not see the flagman.

■ Appellants also assign as error the refusal of the court to give their requested instruction No. 6 as follows:

"You are.hereby instructed that if you find that defendant, Clark R. Gardner's view of the intersecting highway was obstructed over the course of at least the last 100 feet of his approach to the intersection then you must find that it was his duty to drive at such an appropriate reduced speed and have his car under control, that he could slow down or stop as need be, when he reached a point where he could see a vehicle approaching from his right in such proximity as to give rise to the hazard of a collision should he proceed."

The record conclusively establishes that the view of both drivers was obstructed so that neither could see the other as they approached the intersection and until they reached the immediate vicinity of the intersection. At the intersection involved there were no posted signs or other traffic controls and neither road was a through highway. The court gave to the jury the applicable subparagraphs (a) and (b) of I.C. § 49–727, the latter giving the right of way to the driver on the right. The court also gave to the jury the applicable portions of I.C. § 49–701, including the provisions of subparagraph (c) requiring driver to drive at an appropriate reduced speed when approaching and entering an intersection.

In Coughran v. Hickox, 82 Idaho 18, 348 P.2d 724 (1960), a similar case arising out of an intersection collision, we held that the general instructions covering the duties of the respective drivers under the statute were not sufficiently explicit where the view of the drivers was obstructed, as in this case, and that the plaintiff (situated as was Mrs. Kidd in this case) having requested an instruction defining the statutory phrase, "at approximately the same time" (as used in I.C. § 49–727) was entitled to have such instruction given. We further held in that case that:

"If defendant was observing traffic regulations he was entitled to assume that plaintiff was traveling at a lawful rate of speed and that he would approach the intersection at 'an appropriate reduced speed.' If defendant was observing traffic rules and the collision was proximately caused by failure of plaintiff to obey traffic regulations, then it follows that plaintiff would not be protected by the right of way statute.

"Having in mind the fact that defendant's view of the intersecting highway on his right was obstructed over the course of the last 100 feet of his approach to the intersection, it was his duty to drive at such 'an appropriate reduced speed,' and have his car under such control, that he could slow down or stop as need be, when he reached a point where he could see a vehicle approaching from his right in such proximity as to give rise to the hazard of a collision should he proceed. I.C. § 49–701; Walkup v. Bardsley, 8 Cir., 111 F.2d 789. If plaintiff was observing traffic regulations he was entitled to assume that defendant would approach the intersec-

tion and slow down or stop in compliance with his duty as above stated.

"If the jury found these issues of fact as to compliance or noncompliance with traffic regulations in favor of the plaintiff, then the plaintiff was entitled to have the benefit of the statute giving him the right of way." *82 Idaho at 26, 348 P.2d at 729.*

Thus it was held that the duties of the respective drivers in approaching the intersection were reciprocal. The duty of Mrs. Kidd was covered, somewhat repetitiously, in instructions 30, 31, 32, 35 and 37. The duty of Clark Gardner was given in general terms, but his specific duty, occasioned by the obstruction of his view of the road on which Mrs. Kidd was approaching, was not given. That specific duty was stated in the requested instruction and should have been covered. Such an instruction was of considerable importance to plaintiff because the court's instruction No. 37 [2] erroneously tended to excuse any excessive speed or other negligence on the part of Clark Gardner, in his approach to the intersection.

[3] It should be noted here that the law applicable in case of obstructed view does not depend upon the distance over which the driver's view is obstructed. Whether it be 100 feet, or more or less than 100 feet, the distance is important only as a factor to be considered in determining the degree of caution to be required of an approaching driver.

As to the reciprocal duty of drivers as affected by obstructed view, see: Smith v. Squire, 119 Vt. 59, 118 A.2d 355 (1955); Brown v. Gallipeau, 116 Vt. 290, 75 A.2d 694 (1950); 3 Blashfield, Automobile Law & Practice, § 114.40.

Lastly, plaintiff assigns as error certain comments, or oral instructions, given by the court during the course of the trial. Referring to the contract between Gardner Associated and the prime contractor which plaintiff had put in evidence, the court said:

"*I think that this is a good time to instruct the jury that this is not a contract action and it is immaterial to you whether or not this contract was lived up to or whether it was violated.* That's not your problem, that would be a problem with the contractees, the people who made the contract, but this contract may help to indicate to you something about whether or not the parties were negligent in not doing or in doing some of the things they did. In other words, sometimes the party doesn't do something because he doesn't know it should be done. He is not negligent even though other parties realize it should be done. This contract may help to establish that he knew that it should be done. That's the only reason I'm introducing it, the only reason I am permitting it to be introduced * * *." [Emphasis added.]

"Now, Ladies and Gentlemen, I am going to admit this Exhibit and you can take into the Jury room with you along with other exhibits and read it over. I have already talked to Counsel about this matter and I have told them and I am now telling you that size of the signs and the exact nature and so on is not important. *I don't care whether the signs they put up are just like the signs in this contract or not* and I instruct you

2. "Ladies and gentlemen, if Mrs. Zula Kidd approached the intersection and noted that Clark Gardner's car was, also, approaching the intersection from another highway, but if she was aware or should have been aware, also that he was driving at such a speed or in such a manner that he would not be able to stop short of a collision if she entered the highway, then her entering the highway simply because she had the right-of-way was an act of negligence and would deprive her of the right to any recovery. Although the defendant under these circumstances would have been negligent and unable to recover from plaintiff, Mrs. Kidd would, also, have been unable to recover because she would have been negligent.

that you can't find any negligence on account of the signs being different because the sign wasn't there anyhow. So, the negligence would have to be in its not being there, not in what size it was because we don't know what would have happened if it had been there regardless of the size. Maybe it would't have made any difference." [Emphasis added.]

The italicized words are particularly objected to.

It is true as the court observed that this is not an action on the contract, and plaintiff's right to recover does not depend upon performance or breach of the contract by defendants. Davis v. Nelson-Deppe, Inc., 91 Idaho 463, 424 P.2d 733 (1967). However, the comments were not accurate statements of the propositions of law involved. While we do not hold these statements reversible error, it would have been preferable to have covered the points by written instructions.

The evidence does not establish negligence on the part of Mrs. Kidd, as a matter of law. Contributory negligence was an issue for resolution by the jury. Therefore, we cannot say that the errors committed were harmless.

Judgment reversed and the cause is re-amended for a new trial.

Costs to appellants.

SMITH, C. J., and McFADDEN and SPEAR, JJ., concur.

McQUADE, Justice (dissenting).

The evidence shows that the appellant, Zula Kidd, was driving a pickup truck east on a minor, one-lane dirt road which terminated at Archer Road. Archer Road is a graveled county maintained road. Respondent Clark Gardner called by appellant under the statute, testified as to this east-west road:

"Q. I mean there are people living along the east-west road; were there not?

* * * *

"A. * * * They are farming people and if they didn't have a reason to go to town or someplace else, they didn't go. It wasn't a very highly traveled road."

Appellant testified on direct examination as to the east-west road she had traveled:

"Q. Does this road have a common name?

"A. Just a country road.

"Q. Is it a county road or do you know?

"A. Well, it would be a county road, yes."

This appears to be the only evidence as to the character of the east-west dirt road on which appellant was driving. It must be presumed that this lane is not a county road, since appellant was not competent to testify as to whether it was a county road or not.

Respondent Clark Gardner was driving his pickup truck south on the two-lane gravel road which was mainly called Archer Road. This was the road which was being widened and resurfaced. On cross-examination appellant testified as to Archer Road:

"Q. And is the Archer Road considered the main farm to market road?

"A. Yes.

"Q. And the road you were traveling on, as I understand it, was an unimproved dirt road?

"A. It is a dirt road, yes.

"Q. And was it what you would call an unimproved road?

"A. It wasn't paved. It was a dirt road. It had to be kept up because it was a road that people traveled on.

"Q. But it wasn't a well traveled road like the Archer Road?

"A. No, it wasn't."

On redirect examination appellant testified:

"Q. * * * was the Archer Road anything but a dirt road?

"A.  No, it wasn't.

"Q.  It was not improved?

"A.  No."

Respondents' exhibit 2 is a photograph showing the intersection where the accident took place.  The picture was taken from a point just north of the intersection and on Archer Road looking south toward the intersection.  It shows Archer Road as a fairly wide gravel road with the east-west, one-lane dirt road barely visible as it entered Archer Road from the right (west).  Although this picture is somewhat misleading because of the low angle and direction from which it was taken, it was admitted without objection and shown to the jury.  It must be concluded that Archer Road was a major public road and that the one-lane dirt road which entered it was but a minor one.

In this regard, the testimony on direct examination by appellant of James Hill, a state highway department engineer, is relevant:

"Q.  You do know where [the accident] took place?

"A.  Yes, I do know were it took place.

"Q..  Now, is there anything in [the "Uniform Control"] manual that would give you an indication of the type of sign that should have been in that area?

"A.  Yes, there are recommendations for the signing of this particular intersection.

"Q.  What is the recommendation?  * * *.

"A.  Well, * * * it would be a standard that would be used in any county road crossing where the construction work was going on, additional signing could be required, but this book would give you a reference that the county should have had some type of sign even without the construction going on."

It is apparent from the context of these statements that the engineer was indicating that it would be appropriate for Archer Road, the main road, to have been protected by signs of some kind where the

one-lane dirt road entered it.  Clark Gardner testified that he had put a "Trucks Hauling" sign on the east-west road, but it was not there when Mrs. Kidd drove on the road.

The point at which these two roads intersected is called Weeks Corner.  As noted above, this intersection was unguarded by signs.  Both appellant and respondent testified that their view of each other across the northwest corner of this intersection was obstructed by grass, weeds and other obstacles.  Neither saw the other until both were in the intersection.  Respondent was traveling about thirty-five m. p. h. and appellant about ten m. p. h.  Appellant's pickup truck hit defendant's pickup truck broadside in about the middle of the intersection.  There is a small bridge on the east-west road whose east edge is about ten feet from the west edge of Archer Road.  Appellant slowed down on this bridge and, as she did so looked to the left.  Whether or not she saw the respondent coming at that point is in conflict, but in any event appellant did not stop but continued into the intersection at about ten m. p. h.

Appellant Kidd lives about five miles from Weeks Corner and had lived there twelve years when the accident occurred.  She was familiar with Weeks Corner and Archer Road.  She testified on cross-examination:

"Q.  You were aware that the Archer Road was under construction, weren't you?

"A.  Yes.

"Q.  And you were aware that they were resurfacing and widening the road?

"A.  Yes.

"Q.  And you were aware that there were men and trucks and vehicles working on the road, weren't you?

"A.  I knew this road was being worked on, yes.

* * * *

"Q.  So, you were there under notice that the road was under construction

and that cars and vehicles could be traveling up and down the work road in performing their construction activity; isn't this correct?

"A. I suppose so.

"Q. And I presume that you would be aware of the fact that if this were the case that this would constitute some hazard to traffic, couldn't it?

"A. I suppose it could."

In view of these facts, I would submit that appellant Zula Kidd was chargeable with contributory negligence as a matter of law and therefore was barred from recovery. Before reaching this conclusion it should be pointed out that certain concepts are not under discussion in this case. There is nothing in the record to indicate that Archer Road was a designated through highway. Therefore Chapter 2, Title 40, of the Idaho Code is not applicable. Nor does it appear from the record that the east-west dirt road on which plaintiff was driving was a "private road or driveway." Therefore, I.C. § 49–730 is also not applicable. However, a statutory provision which is prima facie applicable to this case is I.C. § 49–727(b), giving the right-of-way to the car on the right when two cars enter the intersection from different highways at approximately the same time. Another is I.C. § 49–701, which requires drivers in all events to drive at a reasonable speed in view of actual or potential hazards in order to avoid collisions and at an appropriate reduced speed at intersections.

It has been stated that in the absence of some statute or ordinance there is no rule of the road giving drivers on paved, heavily-traveled or main roads the right-of-way over drivers on unpaved, lightly-traveled or minor roads.[1] These authorities cite only two cases for this proposition, however,[2] and both of these were decided long before the development of very fast cars and the concomitant considerations of traffic control based upon the theory that fast-moving traffic must be allowed to proceed reasonably uninterruptedly.[3] Nor do these cases appear to have been recently cited for this particular proposition. Without stating that there is a rule that traffic on minor roads must yield to traffic on major roads, it is still relevant to the determination of negligence to consider the character of the roads involved in an intersection collision, at least where their characters are known to both parties.

The rule giving the right-of-way to the driver on the right applies only when the drivers enter the intersection at approximately the same time. Moreover, "the right of way at an intersection * * * is at all times relative and subject to the fundamental common-law doctrine that [one] should exercise the right so as to avoid injury to himself or others, and [one] must exercise due care commensurate with the danger."[4]

"While the Minnesota highway traffic regulation act * * * provides the statutory rules of the road, nevertheless, the common-law rules of negligence are invoked whenever necessary in fixing liability as to participants in a highway accident, for, as this court said in Wilmes v. Mihelich, 223 Minn. 139, 144, 25 N.W.2d 833, 836: * * * 'the right of way statute * * * does not pre-

---

1. 7 Am.Jur.2d Automobiles and Highway Traffic § 198 (1963); Berry, Automobiles § 3.28 (1935).

2. Kersting v. Reese, 123 Kan. 277, 255 P. 74 (1927); Carson v. Turrish, 140 Minn. 445, 168 N.W. 349, L.R.A.1918, 154 (1918).

3. This modern policy is expressed in part by our through highway laws: "The pur-

pose of establishing through highways is to eliminate the hazards created by unmarked intersections and to allow the free and safe movement of traffic on such highways." Sanders v. Hamilton, 91 Idaho 225 at 228, 419 P.2d 667 at 670 (1966).

4. Blashfield, Automobile Law and Practice § 114.82 (3d ed. 1965).

scribe the full measure of duty imposed on drivers at intersections * * *.' "[5] To the same effect is H. E. McGonigal, Inc. v. Etherington,[6] where defendant on the right hit plaintiff's pickup truck broadside as it came from a road to the left into an unmarked intersection of two roads of equal status. Defendant was found negligent.

Much less can a driver on the right rely upon the statutory right-of-way when his view to the left is obstructed. "The degree of care required at a street intersection varies with the conditions reasonably to be observed and increases in proportion to the increased danger reasonably to be apprehended."[7] Idaho has recognized this principle in Coughran v. Hickox.[8] There the plaintiff approached an unguarded intersection from the right and defendant approached from the left. Each driver's view of the other was obstructed. This Court said:

> "While there is no express provision in the present statute for forfeiture of right of way by a plaintiff who approaches an intersection at an unlawful rate of speed, such rule is implicit in the law of contributory negligence. So, if the jury found from defendant's testimony that the plaintiff approached the intersection at an unlawful or dangerous rate of speed, or failed to drive at an appropriate reduced speed when approaching the intersection, and that such conduct was a contributory proximate cause of the collision, then the plaintiff could not recover."[9]

In McGee v. Kuchenbaker,[10] plaintiff approached from the right an unmarked intersection of two gravel roads and hit defendant's pickup truck broadside as it entered the intersection from the left. Plaintiff's view of the intersection was obstructed by a hill and he failed to reduce his speed. Both drivers lived in the area and knew of the hazard. Both were held negligent.

Fletcher v. White[11] involved a country doctor who approached from the right an unmarked intersection of two country roads called Stockbridge Four Corners. The intersection was obscured by a mound. Defendant admitted his negligence but contended that the plaintiff was contributorily negligent as a matter of law. Although the Court in the circumstances failed to find the plaintiff negligent as a matter of law, it aptly stated the standard to be applied:

> "Although the plaintiff had the right of way over traffic coming on his left * * [he did not have] exclusive rights over a vehicle approaching from the disfavored direction. * * * Since the precautions to be taken increase with the hazards, the restricted view made this duty [to approach and enter the crossing slowly and with due care to avoid accident] all the more imperative. * * * In the course of his forty years of practice as a country doctor the plaintiff had passed over the cross roads * * * [very many times] and was familiar with all the conditions there existing."[12]

The *Fletcher* case was followed in Brown v. Gallipeau,[13] where plaintiff approached

5. Kolatz v. Kelly, 244 Minn. 163, 173–174, 69 N.W.2d 649, 656–657 (1955).

6. 118 Ind.App. 622, 631, 79 N.E.2d 777, 780 (1948); see also Drake v. Farmers Mut. Automobile Ins. Co., 22 Wis.2d 56, 66a, 128 N.W.2d 41, 42 (1964) (collision at uncontrolled intersection of two blacktop roads).

7. Blashfield, supra, § 114.11.

8. 82 Idaho 18, 348 P.2d 724 (1960).

9. Id. pp. 25–26, 348 P.2d 728.

10. 32 Wis.2d 668, 146 N.W.2d 387 (1966); cf. Smith v. Lamb, 220 Iowa 835, 263 N.W. 311 (1935), wherein both parties to a collision at an intersection of two country dirt roads obscured by a cornfield were held negligent and defendant was on the right.

11. 114 Vt. 377, 45 A.2d 569 (1946).

12. Id. at p. 379, 45 A.2d 570.

13. 116 Vt. 290, 75 A.2d 694 (1950).

from the right an apparently unguarded intersection and was hit broadside by defendant as he entered the intersection from the left after he had stopped and started up again. Because plaintiff's view of the icy intersection was obscured by a house and a tree, he was found not to have exercised due care in his approach at twenty-five m. p. h. and was found to have contributed proximately to the cause of the accident.[14]

Finally, the knowledge of the plaintiff respecting the preferred status of one or the other of intersecting roads must be considered in determining whether the plaintiff was contributorially negligent. Again the Idaho case of Coughran v. Hickox mentioned above has recognized this consideration. There the defendant, who approached an oiled, blacktop road from the left while driving on a gravel road, was the secretary of the highway district and had actually recorded a resolution designating "all side roads leading into oiled roads in the district, not state highways as stop roads." In that case (the jury returned a verdict for the plaintiff but awarded no damages) it appeared that damages should have been awarded to the plaintiff. In that case the plaintiff approached from the right and because of defendant's knowledge of the character of the roads it was incumbent upon him to stop before entering upon the oiled road.

In this respect, other cases involving collisions at intersections where the guarding sign has been removed are relevant, for they turn upon the knowledge of the participants. Where the party on the secondary road has knowledge of the character of the intersection he is approaching and of the fact that he must stop at the preferred road ahead, then he will be negligent in failing to stop even if he is on the right and even if the stop sign is down. In Bell v. Crook,[15] plaintiff approached from the left the intersection of two graveled county roads called "Stone Corner" in his pickup truck. Defendant approached from the right in his car and hit plaintiff broadside. The intersection was unobstructed, but neither driver saw the other until each entered the intersection at the same time and speed. "[Plaintiff's] north-and-south road had not been designated as a favored highway by the county board or any public body. It had been considered and respected by the public as an arterial road."[16] It had been protected by a stop sign on defendant's east-west road for years, but at the time of the collision the sign was down. Defendant knew that the north-south road was favored, but he failed to stop. Defendant argued that since the sign was down he had the right-of-way because he was on the right, but the court held this reasoning defective because the north-south road had not lost its arterial character merely because the sign was down. That fact was immaterial in view of defendant's knowledge. "The duty of Crook, because of the circumstances present, was to stop [his car] before he entered the intersection and not to have moved into it until he could have done so without hazard to [plaintiff]."[17] Thus, defendant was held negligent.

14. Cf. Tolin v. Hasbrook, 116 Vt. 417, 77 A.2d 914 (1951), wherein plaintiff approaching a guarded intersection from the right on the favored road at forty-five m.p.h. was found contributorially negligent as a matter of law because he was familiar with the intersection but only let up on the gas and glanced to the right but not to the left.

15. 168 Neb. 685, 97 N.W.2d 352, 74 A.L.R. 2d 223 (1959).

16. Id. at 699, 97 N.W.2d 362.

17. Id. at 705–706, 97 N.W.2d 366; see also Haagenson v. Matanuska Valley Lines, Inc., 103 F.Supp. 579, 13 Alaska 648 (D.Alaska 1952), wherein plaintiff was found contributorially negligent despite his being on the right and despite the lack of any stop sign on his street or any designation of defendant's street as a through street, since plaintiff considered for years that he must yield at that intersection; cf. Eberhardt v. Forrester, 241 S.C. 399, 128 S.E.2d 687 (1962); Terrell v. James, 159 S.E.2d 240 (S.C. 1968).

Where the driver on the right is not familiar with the intersection and does not know of the preferred status of the road he is approaching, then it is held that he is not negligent in relying upon his right-of-way in the absence of any stop sign.[18]

Applying these principles to the instant case, it was shown that appellant Zula Kidd knew the dirt road she was traveling was a minor one; that Archer Road was not only the main farm to market road which was more heavily traveled but also that it was under construction and could be traveled by trucks. Mrs. Kidd had lived in the area for twelve years.

Moreover, her view was obstructed to the left. Yet all she did as she approached was to glance to the left as she crossed the small bridge, from which point her view was still obscured. She did not stop but rather drove into the intersection at ten m. p. h. and hit defendant broadside. It must be concluded on this record and under the principles discussed above that it was incumbent upon appellant to stop before entering the intersection and not to drive into it in reliance upon the statutory right-of-way. Her failure to do so constituted contributory negligence as a matter of law. The decision should be affirmed.

18. See Seyfer v. Gateway Baking Company, 159 F.Supp. 167 (D.Ark.1958); Schmit v. Jansen, 247 Wis. 648, 20 N.W. 2d 542, 162 A.L.R. 925 (1945); Lyle v. Fiorito, 187 Wash. 537, 60 P.2d 709 (1936).