WAPPLER, Respondent, vs. SCHENCK, Appellant.

*October 13—November 8, 1922.*

*Automobiles: Negligence: Collision at street intersections: Question for jury: Passenger in automobile: Degree of care required.*

1. To sustain a verdict directed for the plaintiff the reviewing court must look at the facts in the light most favorable for the defendant.
2. Where plaintiff was injured while riding in an automobile which collided with defendant's automobile at a street intersection, and the evidence was conflicting as to the speed of the two cars and as to the location of the point of collision, the evidence is *held* to make the question of negligence one for the jury.

Wappler v. Schenck, 178 Wis. 632.

3. A passenger in an automobile driven by another, while not bound to use the same care as the driver, is bound to use the same care for his own safety that a reasonably careful person would use under similar circumstances.

4. In this case the question as to the care to be exercised by the passenger and as to his duty to admonish the driver is *held*, under the evidence, for the jury.

5. It is only when the proof is clear and decisive and the facts and circumstances are unambiguous, and there is no room for fair and honest difference of opinion, that the court may take the case from the jury or pronounce upon the question of negligence as a matter of law.

APPEAL from a judgment of the circuit court for Milwaukee county: CHESTER A. FOWLER, Judge. *Reversed.*

Action to recover for personal injuries. The complaint alleged that Kenwood boulevard and Maryland avenue are intersecting highways in the city of Milwaukee running in an easterly and westerly and northerly and southerly direction, respectively; that plaintiff, in an automobile, was proceeding in a westerly direction on the north side of Kenwood boulevard toward the above mentioned intersection at a rate of speed of from eight to ten miles an hour, and in the exercise of due care proceeded across the intersection; and that while plaintiff was so doing, an automobile owned and operated by defendant, proceeding in a negligent manner at an unlawful rate of speed in a northerly direction on the west side of Maryland avenue, struck the automobile in which plaintiff was riding and caused plaintiff to be thrown to the pavement.

The answer denied the negligence charged. It appears that Kenwood boulevard is seventy-two feet wide between curbs and has a center park twenty-five feet wide; each driveway, therefore, being twenty-three and one-half feet wide. Where Maryland avenue intersects the boulevard there is a width of eighty feet between the park spaces.

The court directed a verdict for the plaintiff solely on the evidence of defendant, and therefore that is stated at considerable length:

"On that day I did not intend to turn west on Kenwood boulevard. I intended to go straight north on Maryland. I drove a Dodge roadster—left-hand drive. I think the brakes were in fair working condition on that day. I came up Maryland avenue that afternoon—it was about 4:30. I was not in a hurry to get to those lots. I had ample time to go to them. As I approached Kenwood boulevard that afternoon, according to my judgment I was going about twelve to fifteen miles an hour. When I first saw the Heintz automobile going west on Kenwood, I was about opposite the south curb of the parking in the street in Kenwood—the parking in Kenwood boulevard. When I first saw the Heintz car I thought I had plenty of time to cross. At that time when I first saw it, in my judgment, the Heintz car was about fifty to one hundred feet from the place of the accident, which was a little to the west of the east curb line. I changed my mind a second or two later as to my opportunity to pass. At the time I changed my mind as to whether or not I had ample time to pass in front of Heintz's car, I can't say in miles how fast the Heintz car was going, but I realized it was going quite fast. I then tried to stop my car. I put on my foot brake. It took time to apply the foot brake. I had to take my foot off the gas and put it onto the foot brake. I slowed down some but not sufficient to avoid the collision. I am not able to tell the speed the Heintz car passed in front of me, in the number of miles, but it passed in front of me quite rapidly. I did not notice that the Heintz car diminished its speed as it approached Maryland avenue. It seemed to pass in front of me in a straight line. I do not recollect that I made any effort to avoid coming in contact outside of putting on the brake.

"I did not turn my wheel any because I may have been confused. I thought that I would be able to avoid a collision by putting on the brake. The left front part of my car came in contact with Mr. Heintz's rear left part of his car. Then the Heintz car kept on going, and my front wheel was jammed over to one side. My car started to swerve in a semicircle—slow, not very fast. His car had caught my car as it went by and pulled it over, and the wheel was stuck tight. I tried then to straighten out, I

tried to go straight and found that I couldn't—tried to straighten it out and was not successful. I was quite shocked and confused, and all my efforts seemed to be directed to straighten out the car if possible, but it slowly swerved around in a semicircle. I didn't watch the Heintz car after it struck the front end of mine. I know where it was when I got out of my car and found it there where it overturned. As I traveled north on Maryland avenue I traveled on the right side of the highway, except where those ditches were about 150 feet south of the south curb of Kenwood boulevard. At that point I was in the center of the road because those ditches were on each side of the road and left only a space in between. Before I reached that point I slowed down my car, passed through that point very slowly. It was only eight or ten feet wide between the two ditches in the center of the road. I left the space between the two ditches. I proceeded on up to the time I got to the south curb of Kenwood, I was again on the right side of the road. I was not interested in any building in that vicinity. I did not intend to look at it for any purpose at all. No time from the time I passed over this ditch up to the time of the collision did I turn or look over my left shoulder. I was looking straight ahead."

On cross-examination defendant testified as follows:

"Plaintiff's automobile was away from me when I first saw it—about fifty to one hundred feet away. That was the first time I saw it. When I first saw it I thought I still had time to cross over, but I saw the machine was coming at quite a rate of speed, and tried everything I could to stop my machine and failed to avoid a collision. I was not going very fast. I say I did the best I could to stop and I couldn't stop. I didn't, at the very first moment, try to stop, but the first impression was that I thought I could get across, but he was coming pretty fast, and my next inspiration was that I couldn't get across and I tried to stop it. I saw him the first time when he was fifty to one hundred feet from the place of accident. I think he must have been away at least fifty feet. My recollection is it was about fifty feet. There wouldn't have been a collision if I would have stopped my car. I tried to stop, but I didn't have time to stop. I

have my opinion on my speed from the fact that I never exceed fifteen miles an hour. . . .

"At the time when the two machines came together. I was going twelve to fifteen miles an hour. It is my judgment I slacked up after putting on the brakes—slacked up some—I slapped on my brakes. I think I must have been about twenty feet away from the accident at the time I put on the brakes. My recollection is that I had brakes on twenty feet before the time of the contact. When I first saw the automobile of plaintiff, when I was thirty-five or forty feet away from the place where the accident happened, I was going about that same speed, twelve to fifteen miles an hour. After I had the brakes on for twenty feet, my opinion is that I was going slower. I didn't attempt to turn to the right or to the left. Possibly I may have looked at that building when I passed by—I wouldn't say positively, but I will say it is quite likely that I did."

There was testimony on the part of the defendant that the Heintz car in which plaintiff was riding was going between twenty-five and thirty miles an hour; according to the testimony in behalf of plaintiff, the Heintz car was going from twelve to fifteen miles an hour before reaching the crossing, and that at that point the speed was slackened to eight to ten miles an hour. When the driver of the Heintz car first saw the defendant's car it was from 135 to 140 feet south of the place of collision. The plaintiff testified that he also saw the *Schenck* car from 135 to 140 feet from the place of collision and that he said nothing to the driver of the car. There was a conflict as to the location of the place of the accident.

Sec. 1636—49, Stats. 1919, provided in part:

"That in turning corners, in going around curves, at sharp declines, at the intersection of any street or cross-road, and where, for any cause, the view in the direction in which the vehicle is proceeding, shall be obstructed, the speed shall be reduced to such a rate as will tend to avoid danger of accident;" and that:

"At the intersection of any public street or highway with

any other public street or highway of this state, the operator or driver of any vehicle shall have the right of way over the operator or driver of any other vehicle approaching him on such cross street or highway from the left, excepting only in cases of cities where a police officer shall be in actual charge of the regulation of traffic at such intersection of streets."

By direction of the court the jury found for the plaintiff. Damages were assessed in the sum of $5,687, and judgment was rendered on the verdict.

For the appellant there was a brief by *Glicksman, Gold & Corrigan* and *Robert Wild,* all of Milwaukee, and oral argument by *Mr. Walter D. Corrigan* and *Mr. Wild.*

For the respondent there was a brief by *Dale C. Shockley,* attorney, and *Edgar P. Ettenheim,* of counsel, both of Milwaukee, and oral argument by *Mr. Shockley.*

JONES, J.  From the statement of facts it is evident that there were sharp conflicts in the testimony on various phases of the case.  There was the conflict in evidence so common in collision cases as to the rate of speed of both cars. The testimony that the Heintz car was going at the rate of twenty-five to thirty miles per hour may have been far from the truth, but it cannot be said as a matter of law there is no credible evidence to that effect.

Some testimony located the place of the accident about the middle of Maryland avenue; other testimony placed it near the east curb line of the street and near the northeast corner of the intersection.

In the oral argument and briefs counsel for plaintiff have argued that defendant paid no attention to ascertaining whether a car was approaching from the right.  On the other hand, defendant's counsel claim that plaintiff and Heintz, with whom he was riding, were negligent in failing to see defendant's car coming from the left.  Under the familiar rule, in order to sustain a verdict directed for

plaintiff it is necessary to look at the facts in the most favorable light for the defendant.

If the testimony produced by defendant is to be believed and the most favorable construction is to be given it, the jury might have determined that he had reasonable ground to believe that he could safely pass without any collision. And in this connection it would have been proper for them to consider that he might have assumed when he first saw it that the other car was not going faster than the legal rate of speed. It would also have been proper for them to weigh the testimony to the effect that in fact it was being driven at the rate of twenty-five to thirty miles per hour.

On the claim that defendant was negligent in not sooner applying the brakes the jury might have believed that he applied them as soon as he saw the danger and realized the rate of speed of the Heintz car. The trial judge was undoubtedly strongly impressed by the belief that defendant was guilty of negligence. He also desired that the statute quoted in the statement of facts should be observed, and with that we are in entire accord. And yet we consider that under the facts of this case the question of negligence was for the jury under proper instructions. In a recent case in this court, where it was contended that the plaintiff was guilty of contributory negligence as a matter of law, and where defendant's cab had the right of way at the intersection under the statute, in the opinion by Mr. Justice Owen it was said:

"It must be regarded as a verity for present purposes that the plaintiff saw defendant's cab west of the street-car track on Second street when he was at a point ten or fifteen feet north of the north curb line on Wells street. By reference to the plat introduced in evidence, it appears that the cab was then more than 150 feet from the place of collision. Plaintiff was approximately sixty feet from the place of collision. He estimated that he had abundant time to cross the intersection ahead of the cab, driving at from twelve to fifteen miles an hour. It is apparent that, if the

Wappler v. Schenck, 178 Wis. 632.

cab was approaching at anything like a lawful rate of speed, plaintiff had an abundance of time to cross the intersection ahead of the cab. In view of the fact that when plaintiff made his observation he was justified in the belief that he had ample time to cross ahead of the cab, it is impossible for us to say that he was guilty of contributory negligence as a matter of law in his failure to make later observations. Although he knew the cab was coming at a high rate of speed, he also knew that the cab was from two and one-half to three times as far from their point of intersection as he was; that the view of the cab driver was free and unobstructed; and that it was entirely possible for the cab driver to slow down before reaching the intersection. Under these circumstances, it was plainly a jury question as to whether he was negligent in his failure to give further attention to the approaching cab." *Werner v. Yellow Cab Co.* 177 Wis. 592, 188 N. W. 77.

In the New York court of appeals a similar question was lately considered and a right-of-way statute not unlike our own was construed. In the opinion by CARDOZO, J., the court said:

"We think the case was for the jury. With the plaintiff's car forty feet away and the defendant's eighty, there appeared to be sufficient clearance. So, at least, a reasonable man might not unreasonably believe. Sudden acceleration of the defendant's speed was not to be foreseen. Even with added speed, the defendant, if he had looked, could have avoided collision by a trifling bend to the left upon an unobstructed street. The plaintiff in shaping his own course might act on the assumption that common skill and prudence would shape the defendant's also. He was not required to foresee the defendant's blind and uncompromising adherence to an undeviating line. The supreme rule of the road is the rule of mutual forbearance. *Mark v. Fritsch,* 195 N. Y. 282, 283, 284, 88 N. E. 380.

"The defendant, it is said, had the right of way under the statute. 'Every driver of a vehicle approaching the intersection of a street or public road shall grant the right of way at such intersection to any vehicle approaching from his right.' General Highway Traffic Law, sec. 12, sub. 4;

Consol. Laws, ch. 70.   The privilege thus conferred is
not inflexible and absolute.   A right of way, like a burden
of proof, will establish precedence when rights might other-
wise be balanced.   It helps us little when without it the
balance would be unequal.   A right of way might turn the
scales if, when the plaintiff started to cross, the cars had
been equidistant, or nearly so, from the point of the col-
lision, due regard being had also for the speed of their
approach.   Even with the distances what they were, it was
an element which the triers of the facts were to consider in
their estimate of conduct.   That, in the circumstances of
this case, is, we think, the extent of its significance.   The
plaintiff was not to wait until there was no other car in
sight.   Such a rule would be unworkable in crowded cities.
He was to wait until it was reasonably safe to start.
Whether he started when there was danger was a question
for the jury."   *Ward v. Clark,* 232 N. Y. 195, 198, 133
N. E. 443.

A question somewhat analogous to that here involved has
arisen several times in this court.   In *Tesch v. Milwaukee
E. R. & L. Co.* 108 Wis. 593, at p. 608 (84 N. W. 823)
the court said:

"A person desiring to cross a street-car track in advance
of an approaching car has the right of way if, calculating
reasonably from the standpoint of a person of ordinary
care and intelligence so circumstanced, he has sufficient time,
proceeding reasonably, to clear the track without interfering
with the movement of the car to and past the point of
crossing, assuming that it is moving at a reasonable and
lawful rate of speed.   If a person, exercising his judgment
as indicated, attempts to cross the track, and it turns out
that he has miscalculated, he cannot be held guilty of a
breach of duty to exercise ordinary care.   If in the cir-
cumstances stated, other than the speed of the car, the car
is approaching at an unlawful rate of speed, and it is
observable by the person about to cross the track, by the
exercise of ordinary care, he must take that into considera-
tion in determining whether there is time to safely clear the
track, the duty to exercise ordinary care for his own pro-
tection not being excused by the fault of anybody else."

*Speakes L. & C. Co. v. Duluth St. R. Co.* 172 Wis. 475, 179 N. W. 596; *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 171 N. W. 669; *Grimm v. Milwaukee E. R. & L. Co.* 138 Wis. 44, 119 N. W. 833. In these cases it was held that the question of negligence was for the jury.

Another claim made by appellant's counsel is that the question of contributory negligence on the part of the plaintiff should also have been submitted to the jury. He saw the defendant's car 135 to 140 feet away, approaching, as he testified, at a high rate of speed, and gave no warning of danger. While he was not bound to use the same care as the driver, he was bound to use the same care for his own safety that a reasonably careful person would use under similar circumstances. In a recent case in this court it was held that the failure of a gratuitous passenger to admonish the driver was, under the circumstances, contributory negligence as a matter of law. *Howe v. Corey,* 172 Wis. 537, 179 N. W. 791. It could not properly be so held in the present case, but we do consider that the question was for the jury.

It is argued by counsel for respondent that the verdict was properly directed on the ground that defendant failed to reduce his speed to such a rate as would tend to avoid danger of accident, under the statute above quoted. Much that has already been said as to the testimony concerning the relative speed of the two cars and the estimate made by defendant that he could safely pass also bears on this question. The testimony of defendant tends to show that he did somewhat reduce the speed as soon as he apprehended danger. Whether he waited too long before applying the brakes, and whether he failed to use ordinary care in operating them, were questions for the jury.

It is only when proof is so clear and decisive, and the facts and circumstances are unambiguous and there is no room for fair and honest difference of opinion, that the court may take the case from the jury or pronounce upon

the question of negligence as a matter of law.   This rule is so familiar and has been so often declared by this court that it is unnecessary to cite the authorities.   It is our conclusion that the case should have been submitted to the jury.

A large amount of testimony was given relating to damages and numerous objections were made to the admission of testimony which it becomes unnecessary to consider.

*By the Court.*—Judgment reversed, and cause remanded for a new trial. ·