SAILING and another, Respondents, v. WALLESTAD and another, Appellants.

*October 5—November 1, 1966.*

For the appellant State Farm Mutual Automobile Insurance Company there were briefs by *Roberts, Boardman, Suhr & Curry* and *Bradway A. Liddle, Jr.*, and oral argument by *Henry A. Field, Jr.*, all of Madison.

For the respondents there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll Metzner*.

BEILFUSS, J. The appeal presents these issues:

(1) Does the credible evidence support the finding that the defendants were 65 percent negligent and the plaintiffs 35 percent negligent?

(2) Did the trial court err in refusing to instruct the jury that defendant Wallestad could assume that the plaintiff Sailing would yield the right-of-way to him?

(3) Did the trial court err in failing to give an instruction on plaintiff Sailing's negligence with regard to management and control?

(4) Did the trial court err in admitting testimony regarding the issuance and dismissal of a traffic ticket?

The major issue of this case involves a confrontation of two important policies: (1) The strong policy of this court not to upset a jury's apportionment of negligence among two drivers involved in an automobile collision, and (2) the statutory policy of sec. 346.18 (6), Stats., which requires drivers confronted with a yield sign to yield right-of-way to vehicles on an intersecting street.

This court has been reluctant to change a jury's apportionment of negligence under the comparative-negligence statute. In *Baumgarten v. Jones* (1963), 21 Wis. (2d) 467, 124 N. W. (2d) 609, the court stated, at page 471:

"In the great majority of automobile accident cases the comparison of negligence is for the jury, and the instances in which a court can rule as a matter of law that the negligence of a plaintiff equaled or exceeded that of a defendant are extremely rare."

This court has, however, approved the trial court's order setting aside the jury's apportionment of negligence in some instances. In *McCauley v. International Trading Co.* (1954), 268 Wis. 62, 72, 66 N. W. (2d) 633, the court said:

"Under proper circumstances a trial court may decide as a matter of law that one party's negligence is equal to or exceeds that of another, thus disposing of an action, and change a jury's apportionment to correspond. Nevertheless, comparison of negligence is peculiarly a jury, not a court, question."

In the case at bar, the trial court specifically approved the jury's apportionment when it ruled on motions after verdict. In *Maus v. Cook* (1961), 15 Wis. (2d) 203, 206, 112 N. W. (2d) 589, the standard for review where the trial court has approved the jury's apportionment is set forth:

"When a jury's findings are attacked on appeal, particularly when they have had the trial court's approval, our inquiry is limited to the issue whether there is any credible evidence that, under any reasonable view, supports such findings."

In *Maus, supra,* the opinion further states, at page 207:

" 'The degree of negligence attributable to a party is not to be measured by the character thereof nor by the number of respects in which he is found to have been at fault. It is the conduct of the parties considered as a whole which should control. In other words, once it has been established that each has been negligent, it is then the jury's function to weigh their respective contributions to the result, which will, regardless of the nature of their acts or omissions, determine which made the larger contribution and to what extent it exceeds or is less than that of the other.' [Case cited.]"

The appellants contend that Mrs. Sailing's violation of their right-of-way protected by the yield sign should be at least 50 percent negligence as a matter of law in the same way that this court has held that certain violations of right-of-way protected by arterial stop signs were at least 50 percent negligence as a matter of law. While we have had a stop-sign statute (present sec. 346.46) for years, the yield sign was authorized by the legislature in 1959. Ch. 69, sec. 1, Laws of 1959; sec. 346.18 (6), Stats. Sec. 346.18 (3), provides:

"RULE AT INTERSECTION WITH THROUGH HIGHWAY. The operator of a vehicle shall stop as required by s. 346.46 before entering a through highway, and shall

yield the right of way to other vehicles which have entered or are approaching the intersection upon the through highway."

Sec. 346.18 (6), Stats., provides:

"RIGHT OF WAY WHERE YIELD SIGN INSTALLED. The operator of a vehicle, when approaching any intersection at which has been installed a yield sign, shall yield the right of way to other vehicles which have entered the intersection from an intersecting highway or which are approaching so closely on the intersecting highway as to constitute a hazard of collision and, if necessary, shall reduce speed or stop in order to so yield."

Sec. 346.46 (1), Stats., provides:

"Every operator of a vehicle approaching an official stop sign at an intersection shall cause such vehicle to stop before entering the intersection except when directed to proceed by a traffic officer or traffic control signal."

The appellants argue that the policy of the yield-sign statute is closely akin to that of the stop-sign statute, and that this court should hold Mrs. Sailing's violation of the right-of-way created by the yield sign to be as great a degree of negligence as it has held similar violations of right-of-way created by stop signs.

*Schlueter v. Grady* (1963), 20 Wis. (2d) 546, 123 N. W. (2d) 458, contains facts similar to the instant case except that a stop sign was involved. There the plaintiff stopped at a stop sign and looked both ways down the through road. While proceeding into the intersection plaintiff was struck in the side by the defendant driver on the arterial street. The jury found the arterial driver 60 percent negligent, but the trial court granted the defendant's motion for a directed verdict which it had taken under advisement. In affirming, this court held that the plaintiff's negligence as to lookout and failure to yield the right-of-way equalled or exceeded that of the arterial defendant in respect to speed and

management and control, as a matter of law. In explaining the court's reasoning, Mr. Justice DIETERICH said, at pages 553, 554, 555:

"This court repeatedly has held that some dignity must be accorded to users of an arterial highway, and that a driver on an arterial has no duty to anticipate that the user of an intersecting highway will not yield the right-of-way. [Cases cited.]

"...

"It is a fundamental rule of law that one approaching an arterial highway is obliged to stop, look, and think. A motorist proceeding on an arterial has the right to assume that a driver approaching the arterial on a nonarterial street will not only physically stop his car for the arterial, but he will also not proceed into the intersection without first ascertaining whether he can do so with safety. [Cases cited.]"

The defendants-appellants recognize this court's strong policy against changing a jury's apportionment of damages. Yet they contend that, on balance, the purpose of the yield-sign statute will be defeated unless the courts accord that statute the same dignity it accorded the stop-sign statute in the *Schlueter Case, supra.*

We agree that statutory obligation of a driver to yield the right-of-way at a yield sign is somewhat akin to duty imposed upon a driver confronted with a stop sign. However, there is not an absolute duty to stop in case of a yield sign unless another vehicle has entered or is approaching the intersection so closely as to constitute a hazard of collision. The duty imposed upon a driver at a yield sign is less than the absolute duty to stop at a stop sign. The duty to stop at a stop sign is absolute, followed by a duty of lookout, including a calculation of interference with the right-of-way of other vehicles. The duty to stop at a yield sign arises after the required efficient lookout, including calculation. Because of the difference in duty it follows that the driver of a car at a stop sign does have slightly more

control over his vehicle than a driver approaching a yield sign. While this difference in the degree of physical control that is required at a yield sign does not affect the duty to yield the right-of-way, it is a factor that a jury may consider in evaluating comparative negligence.

The trial court, in a memorandum opinion on motions after verdict, analyzed the comparative negligence of the drivers as follows:

"Counsel for the defendants argue strongly that under the conceded facts of this case the plaintiff, who was faced with a yield sign, was as a matter of law at least as negligent as the defendant. This does pose a rather close question but in the very recent case of *Fink v. Reitz*, 28 Wis. (2d) 319, our court at page 322 pointed out the very well-established principle of negligence law as follows: 'Comparison of negligence is peculiarly within the province of the jury.' In that case the court further pointed out that the evidence supported a finding that both parties were causally negligent and that the plaintiffs testimony was not incredible. The remarks of the high court in the *Fink Case* are quite apropos here.

"The plaintiff testified that she was proceeding east on East Mifflin at a speed of about 15 miles per hour. Just prior to the intersection she slowed to about 12 miles per hour and when approximately 60 feet from the west crosswalk she looked to her left and saw nothing. She stated that she looked to her left again when she was approximately 30 feet from the crosswalk and then for the first time saw defendant Wallestad's car approaching at a high rate of speed. She immediately applied her brakes with full force and left skid marks some 25 feet in length. The defendant, on the other hand, testified that he approached the intersection at about 15 miles per hour. Prior to reaching the intersection he stated that he slowed down to a speed of about 5 miles per hour and when he arrived at the south crosswalk he looked to the east and saw nothing. He then stated that he looked to the west and then back again to the east when he first noticed some kind of a shadow and realized that an immediate impact was imminent.

"In our view of the evidence the jury probably found that defendant's version of the accident was incredible

and that he must have been approaching the intersection at a greater rate of speed than 5 miles per hour. The plaintiff's version of the accident, on the other hand, although probably not correct in every detail, appears to be much more credible and apparently the jury so found it. It is obvious that both parties were clearly negligent as to lookout, the defendant more so than the plaintiff, and that plaintiff was also negligent with respect to yielding the right of way. In addition we feel that there is sufficient evidence in the record for the jury to have found that the defendant was negligent as to speed under the circumstances.

"Finally, it is not the number of respects in which each party is negligent which determines the proper allocation or apportionment of negligence but rather it is the negligence of each party viewed as a whole which determines whether one party or the other party is guilty of the higher degree of negligence.

"Although we may not have agreed with the apportionment here found, we cannot say as a matter of law that the apportionment in this case is not supported under any reasonable view of the evidence."

We agree with the trial court's analysis of the evidence and his opinion that it cannot be determined as a matter of law that the causal negligence of Mrs. Sailing was greater than or equal to that of Mr. Wallestad.

The defendants also assert that several errors in the trial entitle them to a new trial.

The defendants submit that the court's refusal to give the following instruction was error:

". . . a driver upon a through or favored highway may assume that other users of the highway will obey the statutory rules of the road as to yielding the right of way, . . ."

The defendants allege error on the basis of *Loizzo v. Conforti* (1932), 207 Wis. 129, 240 N. W. 790, in which an arterial driver requested that the trial court instruct the jury that he could assume that the nonarterial driver would obey the law and stop at a stop sign. The trial

court gave a general instruction to the effect that every driver had a right to assume that other drivers would observe the rules of the road. The supreme court reversed on the ground that a court's instruction must relate the rules of law to the particular factual situation presented by the case before it.

The trial court in the present case did relate the law to the particular facts of the case. With regard to right-of-way, it charged the jury as follows:

"With respect to Question No. 3 and your consideration as to whether or not Helen J. Sailing was negligent immediately prior to the accident, you are instructed that subsection (6) of the statute entitled 'General Rules of Right of Way', provides:

" 'Right of Way Where Yield Sign Installed. The operator of a vehicle, when approaching any intersection at which has been installed a yield sign, shall yield the right of way to other vehicles which have entered the intersection from an intersecting highway or which are approaching so closely on the intersecting highway as to constitute a hazard of collision and, if necessary, shall reduce speed or stop in order to so yield.'

"You are further instructed that the Wisconsin Statutes define right of way as 'the privilege of the immediate use of the roadway.'

"If you find that just prior to the accident and as Mrs. Sailing approached the intersection the Wallestad Pontiac was either already in the intersection or was so close thereto as to constitute a hazard of collision, then it was the duty of Mrs. Sailing to yield the right of way to the Pontiac as defined by the above quoted statute. It is for you to determine whether, under all the facts and circumstances in this case and under the instructions here given you, Mrs. Sailing was or was not negligent in failing to yield the right of way.

"You are further instructed that every operator of a motor vehicle has the right to assume and act upon the assumption that every other motor vehicle operator will observe the rules of the road and will not otherwise negligently expose himself to or put others in danger; and he may continue in that assumption until it becomes apparent, or in the exercise of ordinary care ought to

be apparent, to him that some other motor vehicle operator is, by wrongful conduct, creating danger, or is not aware of, or cannot avoid that danger. In such a situation, every motor vehicle operator must, in order to be free from negligence, make all reasonable efforts to avoid collision or injury even though the other motor vehicle operator is in the wrong in his course of conduct."

The *Loizzo* opinion, *supra*, at page 133, limits its effect by the following language:

"Nor do we intend by what is said in this case to indicate that it is reversible error to give general instructions; but in this case, where no other instructions were given and where no indication is given as to the factual situation to which the instructions apply, it could not be otherwise than misleading."

The instruction is not a ground for reversal. Taken in the context of the entire instruction, it plainly states the law and is not misleading to the jury. *Kuklinski v. Dibelius* (1954), 267 Wis. 378, 381, 382, 66 N. W. (2d) 169.

In light of the foregoing, the court's refusal to give the particular instruction requested by defendants is not reversible error.

The trial court refused to instruct in regard to Mrs. Sailing's negligence as to management and control on the ground that the evidence did not reveal sufficient reaction time available for there to be an issue of management and control. This court has held that a time of three or four seconds is insufficient, as a matter of law, to raise an issue of negligence as to management and control. *Papacosta v. Papacosta* (1957), 2 Wis. (2d) 175, 85 N. W. (2d) 790; *Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 119 N. W. (2d) 457. In the case at bar plaintiff, Mrs. Sailing, traveled about 37 feet from reaction to impact, apparently slowing from about 12 miles per hour to about five. At an average speed of about eight and one-half miles per hour or 12¾ feet

per second, it would have taken her about three seconds to cover the 37 feet. Thus there appears support for the trial court's ruling that there was no issue of Mrs. Sailing's management and control. Her negligence consisted of negligent lookout, failure to yield the right-of-way, and possibly negligent speed under the then existing conditions. The trial court was correct in refusing to submit an instruction on management and control. To have done so could have resulted in duplicity in the jury's findings.

Ordinarily in auto negligence cases the admission of testimony of arrests, convictions, or complaint of a police officer is reversible error. *Anderson v. Saunders* (1962), 16 Wis. (2d) 55, 59, 113 N. W. (2d) 831.

The problem arose because Mr. Wallestad's personal attorney, Mr. Oldenburg, asked the investigating police officer if any traffic citation had been issued in connection with the collision between plaintiff, Mrs. Sailing, and defendant, Wallestad. Plaintiffs' attorney quickly objected, felt that plaintiffs had been prejudicially damaged by Wallestad's opening the door to the traffic-citation issue, and was allowed to put Mrs. Sailing back on the stand to explain that the judge had dismissed the citation. Then Mr. Field, attorney for State Farm, further examined Mrs. Sailing on recross-examination with regard to the ticket. Now Mr. Field says that admission of this testimony was reversible error. In explaining its rulings on the motions after verdict, the court stated that once the defendants had opened the door on the traffic-ticket testimony they could not be heard to complain. We agree.

*By the Court.*—Judgment affirmed.