Ervin M. MILLONIG and Mary Millonig, Plaintiffs-
Appellants-Petitioners,

v.

Amund E. BAKKEN and Safeco Insurance Company of
America, Defendants-Respondents.

Supreme Court

*No. 81–2158. Argued March 28, 1983.—Decided June 1, 1983.*

(Also reported in 334 N.W.2d 80.)

For the petitioners there were briefs by *Frank W. Doster* and *Fiorenza, Weiss, Amato, Hodan & Belongia, S.C.,* Milwaukee, and oral argument by *Mr. Doster.*

For the respondents there was a brief by *Robert L. Elliott* and *Brian C. Tyndall* and *Cook & Franke, S.C.,* Milwaukee and oral argument by *Mr. Tyndall.*

HEFFERNAN, J.. This is a review of an unpublished court of appeals decision dated July 28, 1982, affirming a judgment of the circuit court for Milwaukee county, Reserve Circuit Judge MICHAEL T. SULLIVAN, presiding, which dismissed the plaintiffs' complaint. We affirm the court of appeals..

This case arises out of an automobile accident occurring on January 18, 1977, in Milwaukee, Wisconsin, when a vehicle driven by Amund E. Bakken rear-ended a vehicle driven by Ervin M. Millonig. Action was brought by Millonig against Bakken.[1] At the close of the evidence, Millonig moved for a directed verdict on the premise that the evidence supported the conclusion that Bakken was 100 percent negligent. The circuit judge withheld ruling on the motion for the directed verdict and permitted the case to go to the jury. The jury returned a verdict, finding that defendant Bakken was free of negligence. On motions after verdict, Millonig renewed his motion for a directed verdict against Bakken. After a hearing, the circuit court denied the motion to grant the directed verdict and entered judgment on the jury's verdict, dismissing the complaint.

The plaintiff also moved for a new trial because of claimed errors in the instructions to the jury and because of the inadequacy of the amount of damages found by the jury. These motions were also denied.

It was upon the court of appeals' affirmance of the trial court's judgment dismissing Millonig's action that a petition for review was brought to this court. That petition for review was granted.

The record in this case shows that the accident occurred on the afternoon of January 18, 1977, on South

---

[1] Mary Millonig joined her husband's action, alleging loss of consortium. Because we are concerned only with the question of liability, *i.e.*, the question of the conduct of the drivers, we refer to both plaintiff and defendant in the singular.

43rd Street in Milwaukee, Wisconsin. Only the two drivers involved—Millonig, the driver of the lead car, and Bakken, the driver of the following car—testified in respect to the accident. Millonig testified that he was driving south on 43rd Street and that the traffic was very congested, substantially bumper-to-bumper. He stated that he was proceeding very slowly because of the traffic. When the car immediately in front of him stopped, he stopped also. He said it was not a sudden stop, because he was going at a very slow rate. He testified that, upon stopping, he heard a squealing of brakes behind him, at which point his car was struck from the rear by Bakken's vehicle and pushed into the car ahead of him. Millonig testified that his car sustained some damage and that he sustained injuries to his neck.

Bakken's version of the accident was not much different than Millonig's. He stated that the general condition of the road was icy and slippery. He said he first saw Millonig's car as it passed him. At that time, he stated, he was going about 20 miles an hour. Shortly thereafter, Bakken saw several cars in front of him which were driving bumper-to-bumper and which were slowing down. He said he then slowed down. Just before the accident Millonig was directly in front of Bakken. He saw Millonig's taillights come on, and Bakken immediately applied his brakes; but, nevertheless, he slid into the rear of Millonig's car. Bakken was unable to say what his exact speed was, but he said he was not going fast and that he was going at about the speed of 10 miles an hour. He said the interval between his car and Millonig's at the time he applied his brakes was about the same as that between other cars in the line of traffic. Bakken testified that the very place he had to stop was a slippery spot.

Bakken testified that, when a policeman was called after the accident, it was so slippery that the policeman had trouble staying on his feet. Bakken testified that the policeman who came upon the scene said that he would not charge Bakken with a traffic violation because the road condition was the cause of the accident.

On the basis of all the evidence, there was no contention that Millonig was negligent. Millonig's counsel, therefore, asserted in his motion for directed verdict that only Bakken was negligent and that his negligence was *ipso facto* 100 percent the cause of the collision. The trial judge, in accordance with directions of this court in the past, where there was any possible doubt in respect to the outcome of the verdict, withheld his ruling on the motion for directed verdict and permitted the case to go to the jury.

Only the question of Bakken's negligence was submitted, and the jury found that Bakken was not negligent. Accordingly, the trial court entered judgment on the verdict after denying Millonig's renewed motion for a directed verdict. The court of appeals affirmed the trial court, concluding that there was sufficient credible evidence to support the jury verdict that Bakken was not negligent.

The standard to be used by a trial court in determining whether or not to grant a directed verdict and the standard by which the trial court's conduct in that respect is to be reviewed by an appellate court are well established. The general underlying principle is that the jury is to be the trier of the facts and, in any circumstances where the facts are disputed or where different inferences may be drawn from the facts, the jury is to be the factfinder. Accordingly, a trial court may take a matter from the jury in only very limited circumstances. Here the question is whether the trial court erred, on the plaintiff's renewed motion for directed verdict, when it failed to

overturn the jury's determination that defendant Bakken was not negligent.

A negligence question submitted to a jury is a mixed question of fact and law, because the jury is confronted with a dual problem: What did the person, alleged to be negligent, do or fail to do in a particular situation, and what would a reasonable or prudent person have done in the same circumstance.

It is thus clear that only in the most apparent situations, where the facts are undisputed and the duty is absolutely clear, a court should take a case from the jury. Our rules in that respect are designed to assist a judge in making the determination that only the clearest of cases should be decided by the judge rather than by the jury.

The first of such rules is that a trial judge, in considering whether a motion for directed verdict should be granted, must view the evidence most favorably to the party against whom the verdict is sought to be directed. *Thompson v. Howe,* 77 Wis. 2d 441, 448, 253 N.W.2d 59 (1977). Exactly the same rule is applicable in an appellate court on review of the trial court's determination. *Chart v. General Motors Corp.,* 80 Wis. 2d 91, 110, 258 N.W.2d 680 (1977). In *Zillmer v. Miglautsch,* 35 Wis. 2d 691, 699, 151 N.W.2d 741 (1967), we stated the rule as follows:

"In determining whether or not the trial court was in error in failing to direct the verdict, this court must take that view of the evidence which is most favorable to the party . . . against whom the verdict was sought to be directed."

In *Thompson v. Howe, supra,* we stated that, in viewing the evidence most favorably to the party against whom the verdict is sought to be directed, the test is

whether, "there is any credible evidence which under a reasonable view would support a verdict contrary to that which is sought." P. 448.

Thus, a verdict should be directed only where there is no conflicting evidence as to any material issue and the evidence permits only one reasonable inference or conclusion. *Zillmer, supra* at 698.

In *Wappler v. Schenck,* 178 Wis. 632, 641–42, 190 N.W. 555 (1922), we said:

"It is only when proof is so clear and decisive, and the facts and circumstances are unambiguous and there is no room for fair and honest difference of opinion, that the court may take the case from the jury or pronounce upon the question of negligence as a matter of law."

Even if the evidence adduced is undisputed, if that evidence permits different or conflicting inferences, a verdict should not be directed; and upon review after verdict, a court is obliged to accept the one adopted by the jury. *Leatherman v. Garza,* 39 Wis. 2d 378, 387, 159 N.W.2d 18 (1968); *Lehman v. Sentry Ins. Co.,* 35 Wis. 2d 96, 150 N.W.2d 333 (1967); *Zillmer, supra* at 699. Thus, it is only in the most unusual case that a jury's verdict will be upset.

Turning, then, to the facts in this case, we evaluate those facts to determine whether, under the circumstances, a verdict should have been directed finding Bakken negligent as a matter of law. As stated at the beginning of this opinion, we conclude that the trial court correctly denied the motion for directed verdict.

On this review, as in the trial court and in the court of appeals, Millonig argues that reasonable minds could come to but one conclusion, and that is that Bakken was

causally negligent. If we start out with the assumption that all accidents are the result of negligence, and it be conceded that Millonig was not negligent, then it follows, as does the night the day, that Bakken was negligent and that it was error to fail to direct a verdict. This syllogism, however, is defective, because the common law does not impose upon anyone an absolute duty to avoid an accident. The common law does not contemplate that all accidents or mishaps must arise as a consequence of fault.

*Lembke v. Farmers Mutual Auto. Ins. Co.*, 243 Wis. 531, 11 N.W.2d 169, 12 N.W.2d 18 (1943), highlights the rule of law that no one has imposed upon him the absolute duty not to injure or endanger any person or his property. *Lembke*, at 535. In that case, we quoted with approval the language of *Schulz v. General Casualty Co.*, 233 Wis. 118, 126, 288 N.W. 803 (1939):

" 'The duty is not to have his car under such control as to enable him to avoid accident, but to use ordinary care to that end.' " *Lembke*, at 535.

Thus, the syllogism implicit in Millonig's argument is defective. Merely because Millonig was not negligent and an accident happened does not impel the conclusion that Bakken was negligent. The determination whether Bakken was negligent is to be made in accordance with the instructions given to the jury in this very case:

"A person fails to exercise ordinary care when . . . he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject him or his property, or the person or property of another, to an unreasonable risk of injury or damage."

Clearly, Bakken did not avoid colliding with Millonig's car, but the question before this court on review, apply-

ing the standards of review stated above, is whether the evidence compels the conclusion that he did an act or omitted a precaution when he ought reasonably to have foreseen that the act or omission created an unreasonable risk of his accident. We are satisfied that, viewing the evidence most favorably to Bakken, the party against whom the verdict is sought to be directed, and in the present posture of the case most favorably to the jury verdict, the evidence does not compel such a conclusion.

Bakken admitted that road conditions were bad, but he also testified that he slowed down in response to those conditions when he became aware of other traffic. Bakken testified that it was his estimate that his speed shortly before he put on his brakes could not have been faster than 10 miles an hour. Although Bakken could not testify that he looked at his speedometer to ascertain his speed, nevertheless this court has repeatedly upheld the right of a driver of a vehicle to estimate the speed at which he was proceeding. *Mainz v. Lund,* 18 Wis. 2d 633, 641–43, 119 N.W.2d 334 (1963) ; *see, Milwaukee v. Berry,* 44 Wis. 2d 321, 324, 171 N.W.2d 305 (1969). No argument has been made that the speed of 10 miles per hour was negligent as a matter of law. To so contend would be to argue, in another form, that, because there was a collision, someone must have been negligent.

Millonig argues, however, that little credence should be given to the estimate of 10 miles per hour, because, at another place in Bakken's testimony, he stated he believed he was not going "much *more* than 10 miles an hour." (Emphasis supplied.) Thus, Millonig would conclude that, because of the discrepancies in Bakken's testimony, his testimony was unbelievable and that a rational inference would be to conclude that his speed was excessive under the circumstances.

Although we have said that a jury may, if it so desires, place less credence in the testimony of a witness whose

evidence is inconsistent, that does not render that testimony incredible as a matter of law. *State ex rel. Brajdic v. Seber,* 53 Wis. 2d 446, 450, 193 N.W.2d 43 (1972). Thus, it was the function of the jury to determine where in the discrepant testimony and contradiction of the witness the truth really lay. The jury could conclude, even from the confused testimony, that Bakken was traveling at less than 10 miles an hour or, on the other hand, that the speed exceeded 10 miles an hour. The jury could also have drawn the inference of the lower speed from photographs admitted into evidence, which showed very little damage to Millonig's car. We note that it is common knowledge—a fact of which we can take judicial notice—that damage to a stationary vehicle when struck by another vehicle even at a low speed barely in excess of five miles an hour may be substantial. *See, McGee v. Kuchenbaker,* 32 Wis 2d 668, 673, 146 N.W.2d 387 (1966). Hence, the jury, viewing the physical facts, including the damage to the cars—Bakken's car sustained a cracked grille which punctured the radiator—could have concluded that the collision occurred at a very low rate of speed.

The jury could, from the evidence, conclude that Bakken had acted reasonably as an intelligent and prudent person in reducing the speed of his car to less than 10 miles an hour in response to the unfavorable road conditions which he recognized and that the accident occurred because Bakken was confronted with the necessity—occasioned by Millonig's stop—to come to a halt at a particular spot which was more slippery than the rest of the road on a patch of ice which Bakken had no reason to know was there. There was evidence from which a jury could draw these inferences.

Millonig invites our attention to the safety statute which requires drivers to operate their vehicles at speeds which are safe and prudent under the circumstances and

to the safety statute which provides that the operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of vehicles and traffic upon the road and the conditions of the highway. These statutes, sec. 346.14, *Distance between vehicles,* and sec. 346.57, *Speed restrictions,* add nothing to the common law and are merely codifications of the duty of ordinary care under the circumstances.

In discussing the reduced speed statute, this court has said in *McGee v. Kuchenbaker, supra* at 671–72:

"What reduced speed is appropriate depends upon the particular facts in light of the speed a person of ordinary intelligence and prudence would drive under the circumstances, so as not to subject himself or others or his or their property to an unreasonable risk of injury or damage."

The same reasoning is applicable to both statutes. These statutes do not impose an absolute liability upon the driver to avoid accidents. They merely restate the common law standard of prudent conduct. The evidence was undisputed that Bakken saw Millonig's vehicle ahead of him, he saw the procession of cars ahead of him, and he testified that, when Millonig's brakelights came on, he applied his brakes. Certainly, there was no evidence in respect to negligence as to lookout, and the same evidence also demonstrates that he drove so that his car was under proper management and control.

Considering how slowly the traffic was moving, the jury could not only exonerate Bakken from other specific acts of negligence, but on the basis of the evidence could also conclude that, despite the bad road conditions, Bakken was not negligent in following too closely. Bakken specifically testified that he was not following more closely than other drivers in the same circumstances at

the same time. This, of course, could have led the jury to draw the inference that all of the vehicles following one another were following too closely; but, on the other hand, it could draw the inference that most drivers do not follow too closely, even in bad weather, and therefore Bakken was acting prudently and was not negligent.

Thus, the evidence presented at trial, when viewed in the light most favorable to Bakken, including the inferences favorable to Bakken which could be drawn from the evidence, does not compel the conclusion that Bakken was negligent. There is room in the evidence for a fair and honest difference of opinion. Accordingly, the trial court properly refused to direct the verdict on the liability issue, and the court of appeals properly affirmed the trial court's denial.

It is equally true that a jury could have drawn other inferences and that reasonable jurors, from the same evidence, could have concluded that Bakken was negligent. But that is not the question presented on a motion for directed verdict or on a review of the denial of a directed verdict. Had the author of this opinion been serving on the jury, he might well, under the same evidence, have concluded that Bakken was negligent; but there were inferences to the contrary, and he, or a reasonable juror, would not have been compelled to find Bakken negligent. Thus, viewing the evidence and inferences therefrom in the light most favorable to Bakken, the trial court correctly determined that a verdict should not be directed against him.

Nor do we believe that Millonig's auxiliary argument, that the doctrine of *res ipsa loquitur* should be applied, is persuasive in this case. Millonig argues that a verdict should have been directed under that doctrine, because there was a rear-end collision with a stationary vehicle and that there is no possible explanation which excludes the defendant's negligence. The plaintiff's argument is

not, however, completely in accord with the facts, for here there was evidence from which the jury could infer that the stopping took place upon an unusually slippery spot and that Bakken, who testified he was going at a slow rate of speed, was confronted with a situation in which the car unexpectedly skidded. We stated in *Bartell v. Luedtke,* 52 Wis. 2d 372, 378, 190 N.W.2d 145 (1971), that, "Skidding can occur without fault on the part of a driver." Thus, the mere fact that Bakken collided with the automobile driven by Millonig, which had just come to a stop, is not, under decided cases of this court, probative of negligence as a matter of law. As the court stated in *Bartell, supra,* all that was presented was an issue of fact for the jury to determine. *Bartell,* in essence, stands for the same proposition as *Lembke, supra,* that the mere happening of a collision is not probative that someone has been negligent. Generally, *res ipsa loquitur* only creates a permissive inference and for the doctrine to apply, one of the necessary elements is that the accident probably would not have occurred but for the negligence of the defendant. *Mercurdo v. County of Milwaukee,* 82 Wis. 2d 781, 785, 264 N.W.2d 258 (1978).

Here, the evidence is consistent with an explanation other than that the defendant was negligent. That this is true was demonstrated in our preceding discussion of the evidence in respect to granting or denying a motion for directed verdict. We do not conclude in this case, however, that *res ipsa loquitur* is never applicable to a rear-end collision on the highway; but, in the instant case, the inference of negligence is not so clear that a reasonable person could not fail to accept that inference. Accordingly, under these facts, it would be improper for the court to direct a verdict based on the doctrine of *res ipsa loquitur.* The question presented was correctly determined by the circuit court and the court of appeals to be for the jury.

Because we conclude that the jury was properly instructed, and instructed in such a manner that the real and significant issues were tried and placed before the jury, it is irrelevant that another jury confronting the same evidence could, by drawing other inferences, reach a different verdict.[2] We thus conclude that the trial

[2] The plaintiff Millonig, as a part of his argument that the real controversy has not been fully tried and that there should be a reversal under sec. 751.06, Stats., argues that specific instructions should have been given: Wis. JI–Civil 1055, *Lookout,* and Wis. JI–Civil 1285, *Speed.* The trial court concluded that in the circumstances here Wis. JI–Civil 1112, *Operation of automobile following another,* sufficiently posed both of those questions to the jury, as well as the question of management and control. The court of appeals concluded that the omission of the requested instructions did not deprive the jury of the opportunity to address the question of speed and lookout; and as we have pointed out above, there was no evidence whatsoever which would have sustained a specific instruction in that latter respect. We are satisfied that the instruction given was sufficient and adequately covered the jury issues.

Plaintiff also complained that it was error for the trial judge to have given a separate instruction, Wis. JI–Civil 220, *Jury not to speculate,* because the substance of that instruction was covered in the court's general charge and that to repeat it was prejudicial to the plaintiff because it would unduly encourage the jury to infer from the evidence facts which would tend to exonerate the plaintiff from negligence. We are not convinced in that respect, but we do agree with the plaintiff that the trial judge was not required to have given the special instruction in regard to speculation under Wis. JI–Civil 220. It was repetitive. However, it was a correct statement of the law, applicable to the circumstances, and not prejudicial to the plaintiff. The admonition, not to speculate, could be as prejudicial—if it was at all—to the defendant as to the plaintiff, for it could be construed as a cautionary instruction limiting the use of inferences which could exonerate the defendant from negligence. We see no error in the jury instructions which could lead to the conclusion that the jury was obliged by the instructions or encouraged by the instructions to make findings which were contrary to the evidence and not in the interests of justice. In viewing the record as a whole, we conclude that the controversy was fully and fairly tried,

court was not compelled to direct a verdict against Bakken, that the facts lend no support for the application of *res ipsa loquitur*, that the case was tried under correct instructions, posing the real issues, and accordingly a reversal in the interests of justice is not warranted. We affirm the decision of the court of appeals.

*By the Court.*—Decision affirmed.

STEINMETZ, J. (*dissenting*). The only liability issue in this case was whether the defendant was negligent. It was stipulated that the plaintiff-driver was not negligent. Since the jury found the defendant non-negligent, the accident must be categorized as an unavoidable accident or an "act of God or nature" case. Black's Law Dictionary in defining "accident" refers the reader to "act of God" when negligence is not involved. Given the facts in this case, I sincerely doubt this court wants to apply the theory that such incidents on icy roads can occur without anyone's fault.

Consider the scenario of this case as testified to by the defendant:

(1) The defendant knew it was sleeting while traveling and that the roads were slippery and stated: "On icy conditions, you shouldn't be on the road at all. You should be at home, not on the road."

(2) The defendant answered affirmatively that he recognized the need to control his car's speed on slippery roads.

(3) The plaintiffs' car which was in front of the defendant's car was stopped before and on impact.

(4) The defendant saw the brake lights of the plaintiffs' car come on before impact.

---

that there was evidence to support the jury verdict, and hence the verdict should not have been directed. We are not convinced that there has been a miscarriage of justice or that a new trial would, under even optimum circumstances, impel a different result.

(5) When asked how close he was to the plaintiffs' car when he saw the brake lights come on, defendant answered: "I don't know exactly how far, but it wasn't too far. I wouldn't know how far it was, that's for sure. We were all driving, as you say, bumper to bumper."

(6) The defendant claimed he was not going "much more than ten miles an hour" when he "slammed" on his brakes. Later he testified, "I don't know how many miles [an hour] I went. I know I wasn't going fast . . . ." When asked if he was going too fast when he applied his brakes, the defendant responded: "Well, if it had been a dry road, it would have been no problem."

(7) When the defendant applied his brakes, his car slid and his front bumper went under the plaintiffs' car's rear bumper.

(8) Damage to the defendant's car consisted of a cracked grille and a punctured radiator rendering the car inoperable.

The majority reasons: "The jury could, from the evidence, conclude that [the defendant] had acted reasonably as an intelligent and prudent person . . . ." P. 454. I disagree with that analysis. By the defendant's own statement, he knew of the slippery conditions on the road and admitted that if it had been a dry road, there would have been no problem. That in itself was the problem—it was not a dry road; it was a slippery road. By driving with an inappropriate distance between cars at too high a speed, the defendant was forced to slam on his brakes. All of these factors indicate that the defendant was not operating his vehicle as a reasonable and prudent driver should under similar circumstances. His actions before sliding and the accident were negligent as a matter of law. Since the plaintiff-driver, by stipulation, was not negligent, the defendant was 100 percent causally negligent. Therefore, the plaintiff's motion for directed verdict should have been granted. The jury

verdict was inconsistent with the uncontroverted facts of defendant's negligence as stated by the defendant.

If, as the trial court, court of appeals and this court concluded, this incident could occur as the jury found without fault, then it must be viewed as an unavoidable accident. However, we know from the evidence, including the defendant's testimony, that all other drivers in the line operating cars under the same slippery conditions were able to control and stop their vehicles without striking any other vehicle. Therefore, it was an avoidable accident. All that was required of the defendant was reasonable, non-negligent operation of his vehicle. However, by his own testimony, the defendant was not operating his vehicle as were the other reasonable drivers under the same conditions.

In the majority's attempt to minimize the negligent actions of the defendant, it is even willing to take judicial notice that "damage to a stationary vehicle when struck by another vehicle even at a low speed barely in excess of five miles an hour may be substantial." P. 454. As an initial matter, the defendant was going ten miles per hour. In addition, "substantial" is a vague term and it is not clear to me whether the term refers to actual physical damage or the economic cost of repair in inflationary times. In all, I do not believe the majority's assertion to be a matter of common knowledge. Defendant's car sustained a cracked grille and a punctured radiator. The damage to the plaintiffs' car was also considerable. The jury awarded $500 property damage for plaintiffs' car. However, that was the total value of the car before impact. The damage done to plaintiffs' car was estimated to be between $710 and $790 with the front and rear bumpers needing to be replaced and the frame to be straightened. In effect, the plaintiffs' car was a total loss. That fact gives the most accurate estimate of the physical impact sustained.

I recognize that we said in *Abbott v. Truck Ins. Exchange Co.*, 33 Wis. 2d 671, 148 N.W.2d 116 (1967):

"While this may be a novel case or the rare case where a jury finds there is no negligence on the part of either the plaintiff or the defendant, the jury's verdict cannot be upset because of its novelty or rarity or upon a distribution-of-the-risk theory that someone must be found guilty of negligence in every accident." *Id.* at 678.

However, in this case, as stipulated, the plaintiff-driver was not negligent and the defendant by his own statements was 100 percent negligent.

We also said in *Lembke v. Farmers Mut. Automobile Ins. Co.*, 243 Wis. 531, 535, 11 N.W.2d 169, 12 N.W.2d 18 (1943): "It is the duty of an automobile operator to exercise ordinary care with respect to his speed and control, but the law does not impose upon him the absolute duty not to injure or endanger any person or his property."

However, the law in Wisconsin as reflected in Wis. J.I. —Civil, Part I, 1005 states:

"A person is negligent when he fails to exercise ordinary care. Ordinary care is the degree of care which the great mass of mankind ordinarily exercises under the same or similar circumstances. A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject him or his property, or the person or property of another to an unreasonable risk of injury or damage."

This defendant did not exercise ordinary care which the great mass of mankind ordinarily exercises while driving on slippery, sleet-covered streets. Since the defendant was aware of the icy road conditions, he was "required to exercise a degree of care commensurate with such conditions." Wis. J.I.—Civil, Part I, 1280. The defendant failed to exercise that proper degree of care.

Since the plaintiff-driver was admittedly not negligent in this case, the comparative negligence instruction was not given. That was unfortunate, though correct. Wis. J.I.—Civil, Part II, 1580 speaks of the "fault" of each party. Perhaps if the jury had been specifically advised that the issue was whose fault caused the impact, the jury verdict would have been a more reasonable one.

Due to icy road conditions, the trial court was asked to give Wis. J.I.—Civil, Part I, 1285, "Speed: Reasonable and Prudent; Reduced Speed."[1] The trial court refused to give this instruction ruling that Wis. J.I.—Civil, Part I, 1112, which was given, was sufficient. That was an incorrect ruling. Wis. J.I.—Part I, 1112, refers to the operation of an automobile following another.[2] The con-

---

[1] Wis. J.I.–Civil, Part I, 1285 provides:

"A safety statute regulating speed of motor vehicles provides that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing, and that the driver shall exercise ordinary care to so regulate his rate of speed as may be necessary to avoid colliding with any object, person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"The statute also provides that the driver shall, consistent with the requirements I have just stated, drive at an appropriate reduced speed . . . *(when special hazards exist with regard to other traffic or by reason of weather or highway conditions).*

"Appropriate reduced speed as used in this instruction is a relative term and means less than the otherwise lawful speed. An appropriate reduced speed is that speed at which a person of ordinary intelligence and prudence would drive under the same or similar circumstances."

[2] Wis. J.I.—Civil, Part 1, 1112 provides:

"1112  OPERATION OF AUTOMOBILE FOLLOWING AN-OTHER

"The statutes provide that the operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.

"In determining whether or not the driver of the rear car was following the preceding vehicle more closely than was reasonable

dition of the highway is only one factor that the jury is told to consider in determining whether a car is following another one too closely. That instruction is not specific enough to be sufficient for the facts of this case.

Civil instruction No. 1285 refers to "under the conditions and having regard for the actual and potential hazards then existing." Later in the next paragraph of No. 1285, the instruction states:

"The statute also provides that the driver shall, consistent with the requirements I have just stated, drive at an appropriate reduced speed . . . when special hazards exist with regard to other traffic or by reason of weather or highway conditions."

Instruction No. 1285 should have been given in addition to No. 1112, since No. 1112 does not deal with weather conditions and reduced speed related to such conditions.

In *Zillmer v. Miglautsch*, 35 Wis. 2d 691, 698–99, 151 N.W.2d 741 (1967), we set out the tests to be used by a trial court when determining whether to grant a motion for a directed verdict.

"A case should be taken from the jury and a verdict directed against a party:
" ' ". . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." ' *Anderson v. Joint School Dist.* (1964), 24 Wis. 2d 580, 583, 129 N.W.2d 545, 130 N.W.2d 105, citing *Smith v. Pabst* (1940), 233 Wis. 489, 288 N.W. 780, and *Rusch Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N.W. 405.

and prudent, you should consider the speed of both vehicles, the amount of traffic, condition of the highway and the condition of visibility then existing.

"It is the duty of the driver of the following car to exercise ordinary care to have his car under such control or to maintain such a distance behind the preceding vehicle as will enable him to stop his car and avoid a collision."

"Also:

" 'A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable man.' " *Milwaukee v. Bichel,* ante, p. 66, 150 N.W.2d 419.

"In determining whether or not the trial court was in error in failing to direct the verdict, this court must take that view of the evidence which is most favorable to the party (the plaintiff in this case) against whom the verdict was sought to be directed. *Schumacher v. Klabunde* (1963), 19 Wis. 2d 83, 87, 119 N.W.2d 457; *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N.W. 161. If there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury. *Kielich v. Whittaker* (1924), 183 Wis. 470, 198 N.W. 270. The weight and sufficiency of the evidence is for the jury (*Jolitz v. Fintch* (1938), 229 Wis. 256, 261, 282 N.W. 87), as is the weight to be given to the witness' positive or negative testimony. *Conrardy v. Sheboygan County* (1956), 273 Wis. 78, 82, 76 N.W.2d 560. Furthermore, it is basic that the credibility of the evidence and the inferences to be drawn therefrom are matters for the jury. *Braatz v. Continental Casualty Co.* (1956), 272 Wis. 479, 487, 76 N.W.2d 303. If there is any evidence other than mere conjecture or incredible evidence to support a contrary verdict, the case must go to the jury. *Larson v. Splett* (1954), 267 Wis. 473, 66 N.W.2d 181. Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts. *Davis v. Skille* (1961), 12 Wis. 2d 482, 107 N.W.2d 458; *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 31 N.W.2d 156.

"The stringency of these tests is such that this court has cautioned trial courts against granting motions for directed verdicts in close cases and recommends as the better practice the reservation of a ruling on the motion until after the jury has returned its verdict. *Davis v. Skille, supra,* page 490; *Rasmussen v. Garthus* (1961), 12 Wis. 2d 203, 209, 107 N.W.2d 264; *Koczka v. Hardware Dealers Mut. Fire Ins. Co.* (1966), 29 Wis. 2d 395, 399, 138 N.W.2d 737."

When applying our review of the trial court's failure to direct the verdict for the plaintiff, even after the jury returned its verdict in favor of the defendant, it becomes apparent that the trial court was in error. We held in *Bishop v. Johnson,* 36 Wis. 2d 64, 152 N.W.2d 887 (1967) :

"There is no question the trial court has the power to direct a verdict when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion. *Sailing v. Wallestad* (1966), 32 Wis. 2d 435, 145 N.W.2d 725. When the evidence is of such a nature, only a question of. law is presented and if the evidence is presented to the jury and it does not reach the 'one conclusion,' the court has the power to set aside such verdict. *McCauley v. International Trading Co.* (1954), 268 Wis. 62, 66 N.W.2d 663." *Id.* at 68.

Also, *Wappler v. Schneck,* 178 Wis. 632, 641–42, 190 N.W. 555 (1922) stated:

"It is only when proof is so clear and decisive, and the facts and circumstances are unambiguous and there is no room for fair and honest difference of opinion, that the court may take the case from the jury or pronounce upon the question of negligence as a matter of law. This rule is so familiar and has been so often declared by this court that it is unnecessary to cite the authorities."

In the instant case, the evidence in the form of the defendant's own testimony was so clear and decisive that the trial court had the duty to direct the verdict as to liability in the plaintiffs' favor notwithstanding the jury verdict. There was no evidence from which a reasonable jury could draw the inference that the defendant was not negligent.

Alternatively, I believe the trial court abused its discretion when it failed to grant the plaintiffs' motion for a new trial in the interests of justice. A new trial may be granted in the interest of justice if the verdict is

against the great weight of the evidence, even though there is sufficient credible evidence to support the jury's finding. *Bartell v. Luedtke,* 52 Wis. 2d 372, 377, 190 N.W.2d 145 (1971) ; *Landrey v. United Services Auto. Asso.,* 49 Wis. 2d 150, 181 N.W.2d 407 (1970). The test on review is whether the trial court abused its discretion on ruling on the motion, and I would find in this case there was such abuse.

I would reverse the court of appeals.

I am authorized to state that JUSTICES ROLAND B. DAY and WILLIAM G. CALLOW join this dissenting opinion.